2023-10534 in the matter of Highland Captl Mgmt L.P., the debtor, Highland Captl Mgmt Fund Advisors L.P., now known as Nexpoint et al, Appellants v. Highland Captl Mgmt L.P. Appley. You may proceed with your argument. May it please the Court, good morning, Your Honors. The appellants argue as the sole issue on appeal that the gatekeeper injunction in the confirmation order must be set aside and limited to the same extent that this Court in Highland 1 limited the same plan's exculpation provisions. We are fortunate to have Judge Duncan on this panel since he offered both Highland Captl Mgmt Fund and Highland Captl Mgmt Fund Advisors L.P. We are fortunate to have Judge Duncan on this panel since he offered both Highland Captl Mgmt Fund Advisors L.P.  We are fortunate to have Judge Duncan on this panel since he offered both Highland Captl Mgmt Fund Advisors L.P. There are two articles that Highland Captl Mgmt Fund Advisors L.P. and Highland Captl Mgmt Fund Advisors L.P. both denounce the negligence of the debtor's profession, I'm sorry, of the debtor and the committee members, in other words those who are fiduciaries, through the course of the bankruptcy case. Are we only dealing with the gatekeeper provision found at Article IX.F.? Is that the only thing we're dealing with?  That is, I believe Highland, in its appellee brief, tries to muddy those waters with the general section. Yes, okay. I'm sorry, go ahead. Just the IX.F. gatekeeper provision is the only thing that is before us in this Highland appeal. That is correct, Your Honor. And again, as I've conceded, we do not write on a clean slate, although I'll talk a little bit about law of the case later. Now, there have been subsequent things that the district court has done since the filing. What can we consider when we're addressing this? Your Honor, the only issue here is the confirmation order. There is a lot of ancillary litigation on promissory notes, breaches of fiduciary duty, plain old non-bankruptcy litigation. Those matters are percolating through the federal system. And we also have the appeal of Highland 1, where cert's been sought. Yes, Your Honor. So, should we wait on that? No, Your Honor. Well, the appellee requested that these oral arguments be postponed. I agree to that. The court denied that motion. Right, but nonetheless, we're asking today, would there be a benefit to wait for the outcome of Highland 1, since this is piggybacking on that to some extent? I do not believe so, Your Honor, and here's why. Well, certainly, if the Supreme Court, well, the Supreme Court will rule in Purdue Pharma, and that will have some guidance and principles that the court may find appropriate. But the issue in Purdue Pharma is not so much a gatekeeper, there is none, it is just plain old-fashioned exculpation. And permanent injunctions of third-party claims against third parties. Again, that bears some relevance. The issue is not, however, a gatekeeper like here. We don't know if the Supreme Court will grant cert in this case. It may not, or it may grant it momentarily just to do what it does. But the issue of a gatekeeper, including one that is allegedly predicated on the anti-filing injunction jurisdiction of a federal court, is not, I do not believe, Your Honor, before the Supreme Court. But to reiterate, the problem with the injunction here is that it protects far more people than just the fiduciaries. For example, it protects lawyers, professional employees, general partners, successors and assigns. It protects them against more than just simple negligence. It applies to things like gross negligence, bad faith, intentional acts. And the really important one here, Your Honor, the one that really bothers me as a bankruptcy professional, is that it applies prospectively. We all know that when a debtor seeks bankruptcy protection, it is protected temporarily. But upon its exit, upon the confirmation of its plan, as this Court and Craig's Torus has confirmed, bankruptcy jurisdiction is exceptionally narrow, not that it's not already limited. Because the debtor goes out into the world now and is subject to the same laws as everyone else. So here, this gatekeeper injunction, and it cannot be denied, it applies post-confirmation to the implementation of the plan, the wind-down of the business. Let's remember what Highland does. It manages billions of dollars of assets, several billion dollars of assets of my clients, who also manage $11 billion of their own assets. So what Highland has engineered for itself is post-confirmation, when it is no longer under bankruptcy protection, basically an injunction, that severely curtails, and we'll talk about that as far as the actual real-world example, that severely curtails the rights of my clients and investors to seek redress under SEC principles for all hosts of purely non-bankruptcy claims arising after confirmation. This might be that you may have just answered the question that I have about this case. But I just, can you, I do have a question. Even if the district court treated the gatekeeper injunction like an exculpation provision, and I'm not, that's hypothetical, even if it did, assuming argumento, wouldn't the provision still be facially okay, and the issue would be whether a court would in the future interpret it too broadly. And so we should wait until a court interprets it to, or it's used. Is it because it would chill so much conduct in the meantime? Your Honor, all of the above. Okay, help with this. Let me begin with the fundamental point, which is not the wisdom or facial plausibility of this injunction. It is with subject matter jurisdiction. That is the key here. We are dealing with an Article I court with limited jurisdiction, intersecting with due process rights, i.e., to seek redress from any court in this nation. We're also dealing with a continuing encroachment on the powers of the Article III courts. So now we have an Article I court sitting without a jury, telling my clients and other people, thou shalt not proceed to seek legal redress until you come to me, and only me first, and prove a colorable claim. And then I have the discretion to allow you to prosecute it. And so you can't go to the SEC, like you said, that you were using as an example earlier? Cannot. Now, I've also, in my reply brief, Your Honor, given the court the real-world example. This is no longer a hypothetical. Not my clients, but another entity sought relief from the gatekeeper. Your Honors, I discussed it at length, but I'll be brief. What happened was, we can all agree, suspicious. Three committee members, after confirmation, before it was effective, sold multiple hundreds of millions of dollars of their claims. In direct violation of a Department of Justice directive, the committee members cannot trade claims. Another entity sought relief from the gatekeeper to basically prosecute claims, alleging, and I'm not here arguing one way or the other, I have no knowledge of this, alleging that there was insider trading. The bankruptcy court held an evidentiary hearing with no discovery, two depositions were granted, and it entered a 104-page opinion with hundreds of footnotes, weighing witness credibility, making findings of fact, making conclusions of law. That cannot, Your Honor, that cannot stand, because the bankruptcy court had no jurisdiction to do so. Was that appealed to the district court? Your Honor, I honestly do not know, and I apologize for not having prepared for that. The point is that if, to answer, Your Honor, to answer Judge Elrod your question, if facially, if facially this looks like, well, you know, it passes muster, then let's look at it in real life. The appealee will tell you that the colorable standard is very easy, basically prove some good faith and prove something. That's not how it worked. A 104-page opinion with hundreds of footnotes, Your Honor. But I want to go back to the jurisdiction. The bankruptcy court has stated in its opinion what it believes its jurisdiction and authority to enter this is. The bankruptcy court did not predicate its jurisdiction on an anti-filing injunction. We have different words for what that injunction is. It's basically to prevent a seriously vexatious and serial litigant from proceeding without some judicial oversight. I call it an anti-filing injunction. Bankruptcy court did not predicate its jurisdiction or authority on such powers, nor could it have, because it made no findings needed by this Court's opinion and Carroll and others, extreme vexatious findings that would justify such an argument. Correct. So there's no basis for the authority of the bankruptcy court to have done this continued monitoring? That is correct. The bankruptcy court cites section 1123 of the Bankruptcy Code, which talks about what may be included in a plan. That's purely debtor-creditor relationship. The bankruptcy court cites section 1141 of the Bankruptcy Code, which gives the bankruptcy court the power to implement the plan by requiring people to deliver promissory notes, execute documents, et cetera. And then, critically, the bankruptcy court cites section 105A of the Bankruptcy Code. But what do we do with the language in Highland One? Courts have long recognized bankruptcy courts can perform a gatekeeping function. We need not evaluate whether the bankruptcy court would have jurisdiction under every conceivable claim under the widest interpretation of the gatekeeper function. We leave that to the bankruptcy court in the first entrance, so that the bankruptcy court has the jurisdiction to decide if it has jurisdiction. And the bankruptcy court, in the matter that I discuss in my reply, decided that it had jurisdiction over a non-debtor claim against a non-debtor under SEC and other rules. In other words, my whole argument, Your Honor, is predicated that, yes, the bankruptcy court has a gatekeeper authority within the scope of the exculpation. So just like Highland One wrote, the exculpation and the gatekeeper work in tandem. Exculpation is just quasi-judicial immunity. It doesn't mean you can't sue someone. The gatekeeper now says, okay, you can't sue someone because you're going to be basically interfering with the exculpation I've granted them. But to read the gatekeeper literally on its face, to apply prospectively for all these other people that cannot be protected, to basically discharge non-debtor debt, that's the problem. That's why the result I seek is not the vacation of the gatekeeper entirely. It is that it be construed coextensively with exculpation. So you want us to tailor it through construction. And that is what I believe, Your Honor, Highland One did. Because as Highland One considered each of my arguments against the gatekeeper, it basically said that argument is resolved by our tailoring the exculpation. And so we need to tailor the gatekeeper function to be consistent with the powers that the bankruptcy court would have. Correct. And I'm not agreeing with you. I'm just trying to understand your position. I understand. Allow me just to complete my argument on section 105A, because that is the one that the bankruptcy court predicates this on. Both in Pacific Lumber and in Highland One and in Zane, I'm sorry, Zale Corporation, this court clearly said we will not allow a 105A injunction in order to protect non-debtors, aid in their reorganization, etc., etc., because that is the equivalent of a prohibited exculpation under 524E. And it also demonstrated how section 524G has an express statutory gatekeeper for asbestosis cases. Again, expressio unius est exclusio alterius, which is the whole point of United Operating Pacific Lumber and Highland One. And on my final point, Your Honor, before I yield and reserve my time for rebuttal, when we look at the law of the case doctrine, and I have the citations if needed, it says that the lower court on remand will not only interpret and apply the express language of the mandate, but its spirit. This panel has that same freedom. I'm not suggesting that one of the exceptions to the law of the case should apply. I'm not suggesting that this panel reverse the first panel. I'm suggesting that this panel can readily harmonize Highland One, go with its spirit, avoid a jurisdictional issue, avoid a due process issue, avoid an issue where someone has to go to an Article I court, and I pointed out that a subsequent judge, former Judge Jones, then Sua Sponte said you also have to front the other side's attorney's fees. That is in my brief. So this is, the snowball has begun. This is not a parade of horribles. I'm saying that this panel can harmonize and grant relief to the appropriate people that need protection by simply limiting the gatekeeper to be coextensive. Exactly how would you tailor this to be appropriate and not, I'm not asking for the most generous thing to your clients. I'm asking what would be the proper. The proper would be that the gatekeeper, the period it applies to stops that plan effectiveness. That's when the debtor goes out into the world. So we need a temporal limitation. And we need the same limitation on who is protected, that being the people that make the discretionary fiduciary decisions. Could we remand to the district court, bankruptcy court, to consider appropriate temporal protections without actually driving this ourselves? You can, but that's already been done once and respectfully to both her honor and to this court, the bankruptcy court disagreed with me and found that her gatekeeper injunction was just fine. I'll save my five minutes for rebuttal. Thank you. Good morning, your honors. Opposing counsel has talked a lot about jurisdiction and authority. Those issues are not before the court. Three issues on appeal in the certification for direct appeal. Two of them circled on what is the appropriate scope of the gatekeeper. The acknowledgment is, and it was clear in Highland one, that there is jurisdiction, that there is authority. The appellants acknowledged that. You can understand that if you went beyond what would normally be a bankruptcy court's powers, that if the injunction were construed that broadly, it could go beyond its jurisdiction. And so now we know how it is being construed. Two points. The issue here is whether the gatekeeper is released. And many of my comments are to say it is unequivocally not a release. How the court applied in that matter your honor mentioned and opposing counsel referenced, that's how it was applied. That's a totally different issue than whether it's authorized. This court in the Vegas case where it said that Stern did not prohibit the bankruptcy court from acting as a gatekeeper, then said we don't know how that's going to apply to a non-Stern claim. We will let the bankruptcy court make that first decision. But once we, if it's making too broad of decisions, we would still be able to constrain it. The bankruptcy court has defined what the colorability standard is. We think it's the correct standard in this case based upon the factual findings and the need for the gatekeeper. But that will come before this court likely another day. That is not before the court today. How does the reading of Highland One square with this court's decision in Pacific Lumber? So your honor, the appellants cite a Pacific Lumber, they cite Zale, and they cite Vitro for the proposition that you can't do by permanent injunction what you can't do by exclamation. But it's apples and oranges. In each of those cases there was a permanent injunction that prohibited the prosecution of any claims. Valid or otherwise. Here we have the gatekeeper, and the principle that emerged, the Highland One's guiding principle, is that a plan provision that releases certain non-debtors violates 524E. And six statements that the court made in Highland One, cited in our brief at pages 9 to 10, make it clear that the only problem that the court had with the plans was the exclamation because it was a release of claims against non-debtors. It affirmed the plan in all other respects. It found the gatekeeper and the injunction sound. And it recognized, as your honor mentioned, that Barton, almost 150 years ago, that bankruptcy courts have acted as gatekeepers. And Highland One affirmed the specific factual findings that justified the gatekeeper in this case. Findings of fact that detailed Mr. Donderos and his affiliates' history of frivolous and harassing litigation, both before and after the case. And in response to the bankruptcy, which, if left unchecked, jeopardized the success of the plan. No issues with those factual findings. They were affirmed in Highland One. And in response, what the bankruptcy court did, it narrowed the exculpated parties to the debtor, the committee, its members, and the independent directors. Do you have any authority where the Barton Doctrine has been applied beyond trustees, agents, and receivers? Yes, your honor. I believe we cited in our brief, and there is a number of cases. Well, first, in Highland One, it cites the Carter case to say it was applied to officers. There's also several cases where it was applied post-confirmation. In the Inditech holding case, 2021, Bankruptcy Lexus 2274. In the Ace Insurance case, 2006, Westlaw 842-2206, Trustees of Litigation or Other Trusts. In the Inree Swann Transportation case, 596-BR-127, Trustees of an Asbestos Litigation Trust. The trend over the last several decades in all courts of appeal is to extend Barton beyond trustees. It's to extend it beyond the confirmation of the plan. So do you have any authority to cite to the contrary? They said it's gone too far, as an officer of the court. I believe there may be some arguments, some law in the circuit case, that it may not apply post-confirmation, but that's not the case law in this circuit. I'm wondering if, I think maybe Foster, which was a 2023, I don't recall if that was post-confirmation, but the overwhelming case law is to extend Barton beyond trustees, and it extends it beyond the concept of who can be exculpated under 524E. Are there any cases where the court has approved of gatekeeper provision that is as broad as the one that is here? So look, Your Honor, I'll answer that two questions. First of all, the gatekeeper is not a release, and I will go into and I'll explain to the court why. But second, this is an extraordinary case. But no, so what is the answer to my question, please? Do you know of any case where the court has approved, in all of the country, a gatekeeper provision that is as broad as the one that is here? No, Your Honor, and I would argue to the court, there is no case throughout the country like this case. This is, I believe, the tenth time we are appearing before the Fifth Circuit on different appeals. There have been more than three dozen district court appeals. There have been dozens of contested matters. And in the last three years, who is the estate litigating with? It's Mr. Dondero and its affiliates. That's it. Not the creditors who hold $300 million of claims, not the investors who basically have claims that opposing counsel says are being overrun. Nobody but Mr. Dondero. And again, I'll point the court to the findings of fact the bankruptcy court made. This was an extraordinary case. This case entered bankruptcy because of the history and culture of litigation. This case throughout the bankruptcy was all about Mr. Dondero. After he didn't get what he wanted, after he threatened that he would burn the place down, he embarked on a series of litigation that has continued to this day and has frustrated the plan. If he's really doing that, then why is there not a vexatious litigation order in this case? Your Honor, there is several different ways to accomplish the same goal. But that would be the most straightforward way to have the most, so you wouldn't have to have the most, the broad, injunction in the history of bankruptcy if it was dealt with. If he's being obstreperous and difficult and vexatious and I'm not opining on that, you're telling me that that's what's happening. Then why don't they handle that the way that's normally handled? Well, I'll first go back to the point in terms of the broad gatekeeper. It wasn't in this context, but this circuit has approved bankruptcy courts acting as gatekeepers for purposes of determining what claims, consistent throughout the United States. But we have a specific way to deal with repeated difficult litigants. Your Honor. Why should we have an overbroad gatekeeper rule instead of just directly dealing with the difficult litigant and having the normal process that you would have to do that? Your Honor, vexatious litigant is one way. The Barton Doctrine is another way. And a gatekeeper. There is, if the court is entertaining arguments or jurisdiction, there is jurisdiction in the gatekeeper. The court has jurisdiction at 1334 as Craig Storrs interprets post-confirmation jurisdiction. And again, I think the court may be under a misimpression of what really the gatekeeper does. The gatekeeper is not a release. Not in any way, shape or form. All a party has to do is come to the court and seek a determination if a claim is colorable. If the court decides the claim is colorable, it can proceed in either the bankruptcy court or another court with competent jurisdiction. Full stop. This is not a release. If the court decides the claim is not colorable, does the person have to pay the attorney's fees of the other side? The answer is no, Your Honor. And opposing counsel, again, they cited the Hunter Mountain matter as a matter not before the court. And they cited the Cerda matter where one bankruptcy court took the gatekeeper concept and added things. You're not saying that that's part of this one. Absolutely not. Judge Jarnagan has never done that here. Absolutely not. That is not part of this gatekeeper. And to say that a court approves a concept which we believe is firmly rooted in the bankruptcy court's jurisdiction and based upon the factual findings, and to then say another court could add three bells and whistles, they may be wrong. And that case may come to the court. There are limits. You're not arguing for that. And Judge Jarnagan has never applied that. Absolutely not. Absolutely not. So, again, let's look at what would happen if the gatekeeper is narrowed the way Mr. Rocavina would like it to be narrowed. It would make the gatekeeper essentially meaningless. And why do I say that? Because the gatekeeper would not apply to any conduct occurring after the confirmation. Because all of the exculpated parties who it would apply to ceased to exist as of the effective date. And that was the principal reason that Judge Jarnagan approved the gatekeeper, to deal with post-confirmation litigation that would undermine and threaten the case. The debtor doesn't need the gatekeeper. The debtor has the bankruptcy discharge. The debtor has claim bar dates. The independent directors don't need the gatekeeper. As Highland 1 mentioned, the bankruptcy court's January 9, 2020 order appointing the independent directors gave them their own gatekeeper, and that is not subject to appeal that order. So accordingly, if the appellants are right, and if this court narrows the gatekeeper to only include the exculpated parties, who does it cover? It covers the committee and its members, proclaims excess of negligence, post-petition pre-effective date. The court approved the gatekeeper because it was an important tool to protect the parties implementing the plan from the frivolous and harassing litigation that the court found had plagued the case before confirmation. And this court would take away that extremely important tool if it only ruled that it would apply to exculpated parties, none of which would apply. None of which who existed after the effective date. So it would totally eviscerate and take it out. And again, who needs this gatekeeper? The claimant trustee needs this gatekeeper. The oversight committee needs this gatekeeper. The litigation trustee needs this gatekeeper. The employees of Highland need this gatekeeper. The counsel need this gatekeeper. There was a motion that was filed to sue our firm that was withdrawn after a threat of Rule 11 sanctions. The last three years, the only party we're litigating with is Mr. Dundaro and his affiliates. It's clogged up the system, it's burdened Highland, and it's hurt the creditors who are standing in limbo and not receiving all they're entitled to because of this. Have you asked for vexatious litigation determination? Your Honor, we have a pending motion in the district court. Now, of course, the opponents argue that you don't really need that because you have a gatekeeper. That's one of their arguments. They say you don't have jurisdiction. The district court doesn't have jurisdiction. And we're not vexatious. But that is a matter. That is currently pending. But in Highland 1, the court specifically said, nothing we're saying here impacts your ability to go get a vexatious litigant finding. There's additional things you can get in a vexatious litigant finding. You can get an order that says if they file something in another jurisdiction, they have to say they're a vexatious litigant. You can get criminal sanctions. We didn't go that far. Again, because we haven't decided the case. But there is an argument to be made that what's being done is using this unique tool that's never been used like this, that's not crafted for this purpose, instead of the tool that is supposed to be used by the district court. It's specifically designed for this alleged situation. Well, first, Your Honor, I would say this issue, and to Judge Duncan's comment at the beginning, this issue was decided in Highland 1. We think the issue was decided. Any fair reading of the opinion is that the gatekeeper is approved. And the only problem the court had with the plan was it was a release. So unless this court finds that it's a release, I don't see how this court could find that Highland 1 did not authorize it. I don't think the court can go into the jurisdiction and the authority. Maybe those were issues back when I think the water's under the bridge. They have to preserve those arguments in the notice of appeal. They didn't. Second, a gatekeeper. Again, the gatekeeper concept is something that has existed since Barton. Bankruptcy courts have acted as gatekeepers. The nature and the scope of the gatekeeper is determined by what the underlying facts are. And here what the underlying facts are, unlike any other case, given the contentious litigation. Also, Your Honor, if we look back at when we were here at confirmation, there's been a ton of litigation that's occurred since. Based upon what the litigation was out there, we felt, and the bankruptcy court felt, and I submit Highland 1, the prior panel felt, that the gatekeeper was appropriate. It was appropriate and it was authorized. And, but again, as I mentioned, there was an invitation that if things continue, you can go and seek a vexatious litigant finding. And that's what we've done. But that just because actions and conduct over the last three years have further emphasized a need for protection. And because we're going for additional protection, I don't think there's any moment as to whether back in January or February of 2021, when this plan was confirmed, when the harassment and vexatiousness had gone on for one out of the four years, that there's anything a problem with that. So I'd like to go to the jurisdiction arguments and the authority arguments. Well, first, the appellants argued that there's insufficient evidence before the court for the bankruptcy court to deal in vexatious litigants. And they say without which the gatekeeper is not justified under the Fifth Circuit cases. But as I said, they waived this argument. It wasn't raised on their issues of appeal. It wasn't raised to the bankruptcy court. But neither the bankruptcy court or Highland 1 based their approval of the gatekeeper on a vexatious finding. And how do we know this? As I mentioned, because in the footnote, Highland 1 referred us to being able to file a vexatious litigant motion. This court knew the difference. Gatekeeper approved and a vexatious litigant. And the bankruptcy court's detailed findings that I've mentioned a few times, those were the factual findings that supported the gatekeeper. They also argued no jurisdiction because they may not have jurisdiction of the post-confirmation claims. And as you identified, that was left reserved in Highland 1. Just because a bankruptcy court may not have jurisdiction on the underlying claim doesn't mean they don't have jurisdiction to act as a colorability. They're two separate issues. The claim passes through the gate. Then you have a jurisdictional issue. The ability to act as a gatekeeper is not a jurisdictional issue. I guess this might be a good point to ask this question. Counsel, Mr. Rukavina, brought up the Hunter Mountain Investment Trust matter in which I gather the bankruptcy court applied the gatekeeper provision there. Yes, yes. And what happened? Let's say hypothetically that that was a misapplication or it went beyond the court's jurisdiction or something. It was just wrong. What's the recourse? The recourse, that matter is appealed. That matter is currently on appeal to the district court, and I have no doubt that if it is affirmed, it will be on appeal to this court. It goes to the southern district, right? Not because it was in? No, it goes to the northern district. Does it go back to Judge Brown? No, Judge Jernigan was the bankruptcy court. She made the decision on the colorability and the Hunter Mountain matter, and that was appealed to the northern district. Okay, so that was appealed in the northern district. Right, all the appeals. It's not being intermingled even if Judge Jones was ruling. No, no, this is totally separate from Judge Jones' opinion. That, I would submit, Your Honor, put that on your mind. That has nothing to do with this whatsoever. Nothing to do at all. That is on appeal, and Judge Duncan, what would happen if it came up at the court and the court said that was a bridge too far, which I don't think so, because that standard, hey, it just said, hey, you've got to prove your claim is not without merit and is not being pursued to arrest. And why do we need that? Why did we need that type of colorability determination here? Because a 12B6 standard doesn't make sense. A 12B6 standard would eviscerate the gatekeeper. So that's what the court ruled, that's what's appropriate, that's what's on appeal. If this court then says, no, that's a bridge too far, then it goes back. But the bottom line is, it's not a release under any stretch of the imagination. Your Honor, I'd just briefly like to go to, who are the appellants in this case? So I think context matters. There are two advisory firms owned and controlled by Jim Dondero. They're not parties to any contracts with Highland. They have no commercial relationships with Highland. They have no interest, vested, contingent, or otherwise, in the claimant trust. And although they asserted an administrative claim against the estate, that was denied. It's on appeal to the district court. And even if the appeal succeeds. We didn't make the argument they don't have standing. But the context, and I'm making it for, why are we here? Why are we here? Because Jim Dondero and his affiliates, this time acting through these appellants, are doing everything they can to preserve the right to be able to sue everyone in charge of implementing and consummating the plan. And to go to their jurisdiction, Craig Storer says that the bankruptcy court has post-confirmation jurisdiction for any matters relating to implementation and consummation of the plan. A gatekeeper to prevent this frivolous litigation based upon those findings. How could it not be implementation and consummation of the plan? And there was statutory authority. There were several provisions. It's 1123A5, 1123B6, 1142. Various provisions of the bankruptcy code, the bankruptcy court found, and the confirmation order gives authority to the court. So in conclusion, Your Honor, the principle that came out of Highland 1 is we have to make sure there's no releases. Full stop. The gatekeeper is not a release. It does not release any party from any claim. It's different from the injunction. It's different from the exculpation. And that's why this court should not have any concern that they're doing anything really broad, really wide, that's anything unlike anything done before, because anyone will have their day in court. This is not a release. Thank you, Your Honor. I'm sorry. I meant to ask you if we should wait for the Purdue Pharma and the CERT and the Highland 1. So, Your Honor, initially it was our suggestion, and the reason it was our suggestion is the issue of 524E, whether that's a bar. Purdue has two issues. Is 524E a bar? And if it's not a bar, is it otherwise approved to type release? And in that case, it's not an exculpation. If the Supreme Court came down and said 524E is not a bar, I think Appellant's case goes away. Then there's no difference between exculpated parties or not exculpated parties, because the Supreme Court will say 524 is not a bar, effectively overruling Pacific Lumber. However, even if we lose that and the court says 524E is still a bar, our position is it's not a release, it's not a problem, there's no problem with the gatekeeper. So we thought that since Purdue is likely to be cited, we had heard that it would be expedited because of the issues involved, that it may make sense for the court and for the parties just not to gear up for an argument. However, now that we're here, we have obviously had no issue arguing it. The court has obviously spent a lot of time preparing for it. We would ask the court to issue its decision, because I think what they're asking for is the court to interpret what it did. And again, I would point the court back to all the statements and what they did. Thank you, Your Honor. May I, Your Honor? Your Honor, opposing counsel says look at the findings of fact. Let's look at them. The Bankruptcy Court Record 808 gives this court two reasons for the gatekeeper. Factual reasons. So that the debtor may obtain director's and officer's insurance, and because the threat of litigation and having to deal with that would lead to lower monetary results to creditors. In order to purchase DNO insurance now, my clients can't go to court? I'll tell you, Your Honor, there was a case almost 20 years ago that I was involved with where Judge Rhodes, the bankruptcy judge in Plano, was sued, together with me, for $6 billion in lawful specie. She served 90 days in jail for civil contempt. That didn't work. She served 90 days in jail for criminal contempt. That didn't work. We had Rule 11 orders, 1927 orders. Judge Rhodes ordered the U.S. Marshals to bulldoze her house. That's how bad that case was. And then I went and sought and obtained an anti-filing injunction. That's vexatious litigation. I challenge opposing counsel to point out anywhere in these findings where my clients are labeled vexatious, where they've been sanctioned, never happened. Where they've been alter egoed with Don Darrow, never happened. Or even where Don Darrow is labeled vexatious, never happened. Might happen, but hasn't happened in these findings that I control. So I go back to, it's not a question of the wisdom of this injunction. It's not a question of whether it will ease their reorganization. It's not a question of whether counsel wants to deal with litigation. It's a question of jurisdiction. An Article I court prohibiting people from going to court unless they prove a colorable claim that the Article I court does not have jurisdiction to adjudicate. My clients are wealthy. My clients can pay me and my fancy suit to come here. What about others? $11 billion pension funds. So in order to even file a lawsuit, you've got to go to a bankruptcy court in Dallas. The bankruptcy case may be closed because there's a two-step process in bankruptcy. So now you have to have the bankruptcy case reopened. You have to file a motion. You have to prove colorability. Counsel completely forgets the second element of the gatekeeper. You have to convince the bankruptcy judge to allow you to proceed. If you lose, you have to appeal, maybe come down. You're talking about years of litigation. They want to say they want to avoid clogging the judicial system. This ain't it. Do we have to wait, though, for there to be a pensioner case or something? No, Your Honor. It goes back to your question. What Your Honor is asking basically at the end of the day is a facial versus an as-applied analysis. I urge the court not to do so. I urge the court not to force other litigants to go through this, to hear this case again two or three years. On its face, Your Honor, the bankruptcy court had no jurisdiction to do this, not prospectively, not for non-debtor entities, not for things like bad faith, et cetera. We have Rule 11. We have 1927. The courts have many means at their disposal to protect against unlawful bad faith litigation. Expanding the scope of the bankruptcy court's jurisdiction to this is unprecedented. It is stern v. Marshall. It is marathon, and it is a direct affront to the Article III jurisdiction of this court, which it must jealously guard, and it is a direct affront to due process. Did you appeal those things? All of those things. Does it matter? I don't understand the question, Your Honor. Did I appeal? Did you appeal that straight up? Is this a stern v. Marshall case? It is not a stern v. Marshall. I have always argued jurisdiction. Stern v. Marshall merely confirms the limited Article I jurisdiction of a bankruptcy court to matters affecting the bankruptcy estate. Post-confirmation a year from now, if they make some business decision that is actionable under SEC rules, that's not a bankruptcy estate issue, Your Honor. I maintain that the only power that the bankruptcy court would have had to issue something like this is as an anti-filing injunction for vexatious litigation. I haven't sued her for $6 billion in lawful species, nor will I. Your Honor, thank you. Thank you. We appreciate the well-prepared advocates in this case, and the case is submitted. Thank you, Your Honor.